[906 NYS2d 231]

Yuppie Puppy Pet Products, Inc., et al., Respondents, v Street Smart Realty, LLC, et al., Respondents. Petra Mortgage Capital Corp. et al., Proposed Intervenors-Appellants.

First Department, August 17, 2010

### APPEARANCES OF COUNSEL

*Winston & Strawn LLC*, New York City (*Christopher J. Paolella, Joseph DiBenedetto* and *Christopher Costello* of counsel), for appellants.

*Alan M. Goldston*, Scarsdale, for Yuppie Puppy respondents.

*Abraham Borenstein & Associates, P.C.*, New York City (*Abraham Borenstein* and *Massimo D'Angelo* of counsel), for Street Smart Realty, LLC, and another, respondents.

### OPINION OF THE COURT

ACOSTA, J.

This appeal calls upon us to consider whether a mortgagee can be permitted to intervene in an action where the named defendant, the mortgagor, has defaulted. On the facts of this case, we hold that the motion court improvidently exercised its discretion in denying intervention and that permission to intervene should be granted.

In the latter half of 2007, defendant Street Smart Realty, LLC (Street Smart) purchased property located at 274-276 West 86th Street in the Borough of Manhattan (the premises). The premises had been owned by the family of nonparty Joseph Sporn, president of the plaintiffs, Yuppie Puppy Pet Products, Inc. and Yuppie Puppy Pet Care, Inc. (collectively, Yuppie Puppy). Yuppie Puppy leased the first floor and basement of the premises for its business. Street Smart financed the purchase with a mortgage from appellants and proposed intervenors Petra Mortgage Capital Corp., LLC, Petra Fund REIT Corp. and Petra CRE CDO 2007-1, Ltd. (collectively, Petra) in the amount of $20,853,750. As part of the mortgage and as is relevant to this appeal, Street Smart assigned to Petra, inter alia, the rents from the premises as security for the payment of the mortgage.

Yuppie Puppy and Street Smart then entered into a series of lease agreements dated March 29, 2007. The agreements provided that Yuppie Puppy would relocate from 274 to 276 West 86th Street. When this plan proved untenable, Street Smart and Yuppie Puppy entered into an amended lease surrender agreement in or about December of 2007. Pursuant to the amended agreement, Street Smart was to pay Yuppie Puppy $6,000,000 to vacate the premises altogether.

Street Smart paid Yuppie Puppy approximately $1.1 million pursuant to the agreement. Following Street Smart's failure to pay the remaining $4,900,000, due on April 30, 2008, Yuppie Puppy, by letter dated that same day, sought to hold Street Smart in default of the agreement.

On or about May 14, 2008, Yuppie Puppy commenced the instant action, alleging that Street Smart had breached the agreement by failing to deliver the remaining balance of $4,900,000. Yuppie Puppy sought a retroactive lien on the premises for the remaining $4.9 million dating back to the execution of the lease surrender agreements in December 2007 and an order declaring that, as permitted by the agreement, it could continue to occupy the premises rent-free until the $4.9 million was paid.[1]

Following service of the complaint, Street Smart and Yuppie Puppy entered into settlement negotiations prior to Street Smart answering the complaint or otherwise appearing in the action. While negotiations were ongoing, Yuppie Puppy submitted an ex parte order to have Street Smart declared in default, on the basis of its nonappearance. Street Smart apparently failed to obtain from Yuppie Puppy a stipulation extending its time to appear in the action. The default was granted on September 24, 2008 and an inquest was ordered on that same date (Sherry Klein Heitler, J.).

During this time, Street Smart defaulted on the mortgage. As a result, Petra prepared foreclosure proceedings on the premises. Petra learned of Street Smart's default in the litigation, but was advised by Street Smart that it was preparing a motion to vacate the default judgment. Petra then contacted Yuppie Puppy's counsel, advising him that it would seek to intervene in the case unless a stipulation was signed agreeing that any issue determined in this action would not be binding on any future action involving Petra and the premises. Discussions concerning the language of the stipulation ensued, with Petra sending Yuppie Puppy a draft stipulation on November 6, 2008. However, on November 20, 2008, Yuppie Puppy broke off negotiations with Petra.

Petra prepared an order to show cause for intervention in the action pursuant to CPLR 1012 (a) (2) and (3) or 1013, submit-

---

1. The amended lease surrender agreement contains a clause in section 3 (b) which apparently permits Yuppie Puppy to remain in the premises, without charge, until 5:00 P.M. on the surrender date. However, the numerous subsequent amendments to the amended lease agreements have clouded the precise surrender date.

ting it to the court on December 1, 2008. The order to show cause was not signed by the court. All parties then appeared at the inquest hearing on December 2, 2008.

At the inquest, the court refused to allow Petra to intervene in the proceeding, concluding that as the mortgage lender, Petra had no interest in the outcome of the action. In so doing, the court stated that as an assignee, Petra's rights and duties are between it and Street Smart, as it was not in privity with Yuppie Puppy. The court stated that Petra should proceed with its foreclosure proceeding against Street Smart. By order entered December 4, 2008, the Supreme Court denied Petra's motion to intervene. Petra filed a notice of appeal from that order.

Subsequently, the court entered a judgment on August 17, 2009 in Yuppie Puppy's favor which permitted it to continue to occupy the premises, without charge, until Street Smart was able to pay $4,900,000 owed to it under the agreements.

Petra then commenced its foreclosure action. By order dated October 9, 2009 (Milton Tingling, J.), Petra was granted summary judgment against all defendants, including Street Smart and the property's other tenants, except Yuppie Puppy.

As a threshold matter, the interests of justice and judicial economy lead this court, sua sponte, to deem Petra's notice of appeal a motion for leave to appeal from the order, and so deemed, grant said leave (see e.g. Winn v Tvedt, 67 AD3d 569 [2009]).[2]

CPLR 1012 (a), specifically, subdivisions (2) and (3), provides that upon timely motion, any person shall be permitted to intervene in an action when "the representation of the person's interest by the parties is or may be inadequate and the person is or may be bound by the judgment" (subd [2]) or "[w]hen the action involves the disposition or distribution of, or the title or a claim for damages for injury to, property and the person may be affected adversely by the judgment" (subd [3]). CPLR 1013 provides that upon timely motion, a court may, in its discretion,

---

**2.** Defendant-respondent Street Smart has submitted a lengthy brief on this appeal arguing that the motion court should have permitted it to appear at the inquest, cross-examine witnesses, give testimony, and offer proof in mitigation of damages. However, there is no basis for this Court to consider Street Smart's arguments on appeal. The judgment was entered on Street Smart's default and it never filed a motion to vacate the default judgment before the motion court. Indeed, there is no indication in the record that it even filed a notice of appearance, leading the court to note that it did not want Street Smart on the record at the inquest "because, really, in a sense, you're not here."

permit intervention when, inter alia, the person's claim or defense and the main action have a common question of law or fact, provided the intervention does not unduly delay determination of the action or prejudice the rights of any party.

Consideration of any motion to intervene begins with the question of whether the motion is timely. In examining the timeliness of the motion, courts do not engage in mere mechanical measurements of time, but consider whether the delay in seeking intervention would cause a delay in resolution of the action or otherwise prejudice a party (*see e.g. Teichman v Community Hosp. of W. Suffolk*, 87 NY2d 514, 522 [1996]; *Poblocki v Todoro*, 55 AD3d 1346 [2008]).

Here, there was no delay in Petra's motion to intervene in the case and no prejudice to Yuppie Puppy as a result of the motion. The record makes clear that Petra, as Street Smart did before it, sought in good faith to resolve its issues with Yuppie Puppy before being forced to seek intervention in the action. As Petra sought to intervene a mere two weeks after the negotiations to obviate the motion to intervene ended, it cannot be said the motion was untimely. Neither can the motion be held to be untimely if measured by Street Smart's default; Petra sought to intervene three months after the default was entered and inquest directed in September 2008 (*see Moon v Moon*, 6 AD3d 796 [2004] [five-month delay in seeking intervention not prejudicial]). Moreover, Yuppie Puppy was not prejudiced by the motion since it had notice of Petra's intent to file the motion if their negotiations failed.

Intervention is liberally allowed by courts, permitting persons to intervene in actions where they have a bona fide interest in an issue involved in that action (*see e.g. Nicholson v Keyspan Corp.*, 14 Misc 3d 1236[A], 2007 NY Slip Op 50330[U] [Sup Ct, Suffolk County 2007]). Distinctions between intervention as of right and discretionary intervention are no longer sharply applied (*see Siegel*, NY Prac § 178, at 307 [4th ed]; *see also Berkoski v Board of Trustees of Inc. Vil. of Southampton*, 67 AD3d 840, 843 [2009]).

As the holder of the mortgage on the underlying premises, it cannot be seriously disputed that Petra has a real, substantial interest in the outcome of this litigation (*see e.g. Wells Fargo Bank, N.A. v McLean*, 70 AD3d 676 [2010]). Additionally, it is clear that Petra's interests were not adequately represented by Street Smart, the defaulting defendant (*see Greenpoint Sav. Bank v McMann Enters.*, 214 AD2d 647 [1995]).

Moreover, the facts plainly warrant intervention under both CPLR 1012 (a) (2) and (3). The resulting judgment following the default and inquest permitted Yuppie Puppy to remain as a tenant of the premises, rent free, until Street Smart was able to pay the amounts due under the agreements. The basis for this part of the judgment, which substantially impairs the interest of Petra in receiving the rents of the premises as a guarantee of the mortgage, is, at best, unclear from the record (*cf. Loewentheil v O'Hara*, 30 AD3d 360 [2006] [37.5% shareholder in the corporate defendant properly granted intervenor status in view of her substantial economic interest in the outcome of plaintiffs' action to recover on disputed promissory notes]).

Furthermore, Yuppie Puppy has aggressively used the judgment in an effort to preclude Petra from obtaining any relief in its separate, pending, foreclosure action. In its recently filed brief opposing summary judgment in the foreclosure proceeding, of which we take judicial notice as a undisputed court record or file (*see e.g. RGH Liquidating Trust v Deloitte & Touche LLP*, 71 AD3d 198, 207 [2009]), and during oral arguments on this appeal on June 9, 2010, Yuppie Puppy argued that the judgment in this case is a complete defense to foreclosure, as the monies which remain owing to it are ostensibly part of the negotiated purchase price of the property, superior to Petra's mortgage, and thus, cannot be foreclosed.

Yuppie Puppy cannot be permitted to have it both ways, arguing on the one hand that Petra cannot be permitted to intervene in this action to defend its interest and then arguing on the other that the judgment which Petra was not permitted to defend itself against is to be given preclusive effect in the foreclosure proceeding. It is axiomatic that the potentially binding nature of the judgment on the proposed intervenor is the most heavily weighted factor in determining whether to permit intervention (*see e.g. Vantage Petroleum, Bay Isle Oil Co. v Board of Assessment Review of Town of Babylon*, 61 NY2d 695, 698 [1984] [whether a movant for intervention "will be bound by the judgment within the meaning of (CPLR 1012 [a] [2]) is determined by its *res judicata* effect"]).[3]

---

**3.** In an order of the Supreme Court, New York County entered April 26, 2010 (Milton A. Tingling, J.), in an action by the receiver of rent for the property against Yuppie Puppy, the court granted the receiver's motion to direct Yuppie Puppy to pay use and occupancy. The default judgment was found to have no preclusive effect against the receiver, the receiver was granted use

Accordingly, the order of the Supreme Court, New York County (Eileen Bransten, J.), entered December 4, 2008, which denied Petra's motion to intervene in the action, should be reversed, on the law, with costs, and the motion should be granted.

ANDRIAS, J.P., SAXE, FRIEDMAN and NARDELLI, JJ., concur.

Order, Supreme Court, New York County, entered December 4, 2008, reversed, on the law, costs awarded to appellants, and Petra's motion to intervene in the proceeding granted.

---

and occupancy from June 2008 until the present time, and whatever "lien" Yuppie Puppy possesses was found to be subordinate to Petra's mortgage. However, the fact that the receiver was ultimately successful does not impact Petra's right to intervene in this action.