JY Not So Common L.P. v P & R Bronx, LLC (2023 NY Slip Op 23122)

[*1]

JY Not So Common L.P. v P & R Bronx, LLC

2023 NY Slip Op 23122

Decided on April 26, 2023

Supreme Court, Bronx County

Gomez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on April 26, 2023
Supreme Court, Bronx County

JY Not So Common L.P., Plaintiff(s),

against
P & R Bronx, LLC; PRADEEP RAMDEO; ROHANIE RAMDEO; INTERNAL REVENUE SERVICE; UNITED STATES OF AMERICA, DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT; CITY OF NEW YORK DEPARTMENT OF TRANSPORTATION PARKING VIOLATIONS BUREAU; CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD; CITY OF NEW YORK TRANSIT AUTHORITY TRANSIT ADJUDICATION BUREAU; NEW YORK STATE DEPARTMENT OF TAXATION & FINANCE; CITY OF NEW YORK DEPARTMENT OF FINANCE; AND JOHN DOE 
 #1 THROUGH JOHN DOE # 99, Defendant(s).

Index No. 32595/2016E

Counsel for P&R: The Law Offices of Jay S. Markowitz, PC
Counsel for NYSOSC: New York State Office of the Attorney General

Fidel E. Gomez, J.

In this action for foreclosure on a mortgage and the sale of the real property pledged as security, defendant P&R BRONX, LLC (P&R) moves seeking, inter alia, a preliminary injunction, enjoining defendant CITY OF NEW YORK DEPARTMENT OF FINANCE (NYCDF) from transferring surplus money deposited with NYCDF after the sale of the mortgaged premises. P&R avers that it has a likelihood of success on the merits on its claim for the foregoing surplus funds, that the equities tip in its favor, and that absent an injunction, it would sustain irreparable harm. Nonparty NEW YORK STATE OFFICE OF THE STATE COMPTROLLER[FN1]
 (NYSOSC) opposes the instant application asserting that whether the surplus funds ought to be transferred to it by NYCDF will be determined at an administrative hearing, such that this Court cannot issue any orders affecting the surplus funds and that in any event, P&R fails to establish that it will succeed on the merits or that it will be irreparably harmed by [*2]the transfer of the surplus funds to NYSOSC.
For the reasons that follow hereinafter, P&R's motion is denied.
The instant action is for foreclosure on a mortgage, the sale of the real property pledged as security therein, and to enforce a guaranty. The complaint alleges the following. On March 12, 2003, pursuant to a note, nonparty Astoria Federal Savings and Loan Association (Astoria) loaned defendants PRADEEP RAMDEO (PR) and ROHANIE RAMDEO (RR) $506,250. On that same day P&R executed a mortgage, wherein it pledged premises located at 1205 Commonwealth Avenue, Bronx, NY as security (1205). On July 23, 2007, Astoria assigned the foregoing note and mortgage to nonparty Washington Mutual Bank (Wamu). On July 24, 2007, pursuant to a note, Wamu loaned P&R $299,911.94. On that same day P&R executed another mortgage wherein to secure the foregoing loan, it pledged 1205 as security. Additionally, P&R executed an agreement wherein the two notes were consolidated, reflecting one loan totaling $775,000. P&R also executed a separate agreement, wherein the two mortgages were consolidated, into a single mortgage, pledging 1205 as security for the consolidated note. For purposes of additional security, PR and RR executed guaranty agreements, wherein they agreed to personally guarantee P&R's obligation under the new note. On April 25, 2012, nonparty JPMorgan Chase Bank, Wamu's successor in interest, assigned the note and mortgage to nonparty Velocity Commercial, LLC, who on June 24, 2016, assigned the note and mortgage to plaintiff. Pursuant to the foregoing agreements, P&R was, inter alia, required to make monthly payments on the loan therein and pay all amounts due under the loan when due. The failure to make a payment when due constituted a default, which, per the agreements, would authorize plaintiff to bring an action to foreclose on the mortgage. On April 1, 2016, P&R defaulted and in failing to make P&R's payments, PR and RR have breached the guaranties. Based on the foregoing, plainitff, inter alia, seeks a judgment authorizing foreclosure on the mortgage and the sale of 1205.

 Procedural History
On May 12, 2017, this Court (Thompson, J., ret.) issued an order granting plaintiff's application for the entry of a default judgment and appointing a referee to compute all sums due to plaintiff. 
On June 12, 2017, the City of New York filed a notice of appearance and by virtue of a lien, claimed any surplus money remaining after the sale of 1205.
On September 20, 2017, the Court (Thompson, J., ret.) issued an order granting plaintiff's application for the entry of a judgment of foreclosure and sale and confirming the referee's report.
On February 26, 2018, the Court (Taylor, J.) issued an order denying P&R's application to stay the sale of 1205.
On October 5, 2018, the Court (Taylor, J.) issued an order denying P&R's application seeking to void the sale of 1205.
On January 17, 2019, surplus money totaling $133,416.98, was deposited with the County Clerk/NYCDF.
On May 31, 2019, the Court (Gonzalez, J.) issued an order denying P&R's application to, inter alia, reject the referee's post-sale report.
On July 23, 2019, P&R filed a notice claiming all surplus money resulting from the sale of 1205.
On February 28, 2020, the Court (Gonzalez, J.) issued an order, rejecting the referee's post-sale report to the extent of holding that the City of New York could not satisfy its lien with any surplus money in this action.
Standard of Review
CPLR § 6301 describes the grounds upon which the court can grant a preliminary injunction and reads, in pertinent part, as follows:
A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff.
Thus, a preliminary injunction "provide[s] a provisional remedy by maintaining the status quo pending a full hearing on the merits, rather than to determine the ultimate rights of the parties and mandate corrective action" (Jamie B. v Hernandez, 274 AD2d 335, 336 [1st Dept 2000]). Accordingly, the court should not, on a motion for a preliminary injunction, grant the ultimate relief sought in the underlying action (id. at 336).
Because a preliminary injunction substantially limits a defendant's rights and is, therefore, an extraordinary provisional remedy, it requires a special showing (Margolies v Encounter, Inc., 42 NY2d 475, 479 [1977]). Stated differently, "[i]njunctions Pendente lite, should be sparingly issued" (Graves v Lombardi, 42 AD2d 700, 700 [2d Dept 1973]). Hence, a preliminary injunction will only be granted when the party seeking such relief demonstrates a likelihood of ultimate success on the merits, irreparable injury if the preliminary injunction is withheld, and a balance of equities tips them in favor of the moving party (Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839, 840 [2005]; Doe v Axelrod, 73 NY2d 748, 750 [1988]; 61 West 62 Owners Corp. v CGM EMP LLC, 77 AD3d 330, 334 [2010], mod 16 NY3d 822 [2011]; Second on Second Cafe, Inc. v Hing Sing Trading, Inc., 66 AD3d 255, 264 [1st Dept 2009]; Stockley v Gorelik, 24 AD3d 535, 536 [2005]).
With respect to likelihood of success on the merits, the threshold inquiry is whether the proponent has tendered sufficient evidence demonstrating ultimate success in the underlying action (Doe at 750-751). While the proponent of a preliminary injunction need not tender conclusive proof beyond any factual dispute establishing ultimate success in the underlying action (Sau Thi Ma v Xuan T. Lien, 198 AD2d 186, 187 [1993], lv dismissed 83 NY2d 847 [1994]; Ying Fung Moy v Hohi Umeki, 10 AD3d 604, 605 [2004]), "[a] party seeking the drastic remedy of a preliminary injunction must [nevertheless] establish a clear right to that relief under the law and the undisputed facts upon the moving papers" (Gagnon Bus Co., Inc. v Vallo Transp., Ltd. 13 AD3d 334, 335 [2004]). This, of course, does not mean that plaintiff must conclusively establish guaranteed success on the merits and thus, issues of fact raised by the defendant cannot serve as a basis for denial of any motion seeking a preliminary injunction (Ma at 187; Moy at 605; Stockely at 536; Demartini v Chatham Green, Inc., 169 AD2d 689, 689 [1st Dept 1991]). In Doe, plaintiffs, a coalition of various members of the medical and pharmaceutical communities, sued seeking a declaration that 100 NYCRR 80.67 - which [*3]imposed strict control on certain tranquilizing medications - be declared unconstitutional (Doe at 749). Plaintiffs also sought a preliminary injunction enjoining defendant, the State, from enforcing the challenged regulation (id.). The court denied plaintiffs' request for a preliminary injunction, holding that because plaintiffs failed to establish that defendant "acted outside of the authority constitutionally delegated to him under the Public Health Law or that the regulation was so lacking in reason for its promulgation that it [was] essentially arbitrary" (id. at 750 [internal citations and quotation marks omitted]), they failed to establish a likelihood of success on the merits (id.). Conversely, in Stockley, the court granted plaintiffs' - owners of a condominium - application for a preliminary injunction, thereby enjoining defendants - also owners of the condominium - from building a structure, which plaintiffs established would "encroach upon portions of the common elements of the condominium, which may require an easement the defendants did not seek, and would deprive the plaintiffs of the use and enjoyment of certain common elements, as well as portions of their own units" (Stockely at 536). The court held that plaintiffs' evidence established a likelihood of success on the merits insofar as they demonstrated that they had initially authorized defendants' proposed construction without being fully apprised of its extent, which did not become known until plans were drawn (id.). 
With regard to irreparable harm, generally, the inquiry is whether in the absence of a preliminary injunction, usually to preserve the status quo, any judgment in the underlying action would be rendered ineffectual (Ma at 186; Moy at 604). When this is the case, the proponent of a preliminary injunction has demonstrated irreparable harm. In Ma, plaintiff sued to recover payments from a winning lottery ticket, such winnings held by the defendant (id. at 186). Finding that a preliminary injunction was warranted, the court held that since it was clear that defendant intended to spend the proceeds at issue - intending to share the funds with his family - it was clear that absent a preliminary injunction, plaintiff would be irreparably harmed inasmuch as any judgment would be rendered ineffectual (id. at 186). The court in Moy similarly held that plaintiff had demonstrated irreparable harm but for the grant of preliminary injunction. In that case, plaintiff sued to void the transfer of her ownership interest in real property on grounds that such transfer was obtained by fraud (id. at 604). In holding that plaintiff established entitlement to a preliminary injunction, the court noted that "[t]he purpose of a preliminary injunction is to maintain the status quo and prevent the dissipation of property that could render a judgment ineffectual" (id. 604), and thus, that absent the preliminary injunction, defendant could transfer the property, thereby irreparably harming plaintiff (id.). 
With regard to the balancing of equities, the same requires that the court look at the prejudice which may accrue to the parties in the event the application for an injunction is granted or denied (Ma at 186-187), and usually the equities tip in favor of the party who would be irreparably harmed absent the grant of a preliminary injunction (id. at 187). Thus, should the court determine that plaintiff would be irreparably harmed by denial of the preliminary injunction while defendant would suffer little or no harm if said injunction is granted, then a preliminary injunction should be granted (id.).
Pursuant to CPLR § 6312(b),
prior to the granting of a preliminary injunction, the plaintiff shall give an undertaking in an amount to be fixed by the court, that the plaintiff, if it is finally determined that he or she was not entitled to an injunction, will pay to the defendant all damages and costs [*4]which may be sustained by reason of the injunction
Thus, an undertaking is a condition precedent to the grant of a preliminary injunction and such requirement cannot be waived by the court (Rourke Developers Inc. v Cottrell-Hajeck Inc., 285 AD2d 805, 805 [3d Dept 2001]; Smith v Boxer, 45 AD2d 1054, 1054 [2d Dept 1974]). The amount of such undertaking is solely within the court's discretion and should be as much as rationally necessary to compensate defendant for any potential damages should it later be determined that a preliminary injunction was unwarranted (Clover St. Assoc. v Nilsson, 244 AD2d 312, 313 [2d Dept 1997]; Kazdin v Putter, 177 AD2d 456, 457 [1st Dept 1991]). The undertaking represents the amount and indeed the limit of damages to which defendant will be entitled if it is determined that no preliminary injunction ought to have been granted (Bonded Concrete, Inc. v Town of Saugerties, 42 AD3d 852, 855 [3d Dept 2007]).
Pursuant to CPLR § 2501(1) and (2), an undertaking is
[a]ny obligation, whether or not the principal is a party thereto, which contains a covenant by a surety to pay the required amount, as specified therein, if any required condition, as specified therein or as provided in subdivision (c) section 2502, is not fulfilled; and . . . any deposit, made subject to the required condition, of the required amount in legal tender of the United States or in face value of unregistered bonds of the United States or of the state.
CPLR § 2502(a)(1) and (2) defines a surety as an insurance company or a natural person, except an attorney.
Discussion
P&R's motion is denied. Significantly, on this record, P&R fails to establish that absent injunctive relief, it would be irreparably harmed.
Preliminarily, this Court notes that NYSOSC is not a party to this action, and despite this, neither P&R nor NYSOSC discuss this procedural impediment to the latter's participation in this action. Since P&R cloaks NYSOSC with the standing to oppose the instant application as if it were a party, this Court sua sponte allows NYSOSC to intervene in this action for purposes of opposing the instant motion.
CPLR § 1001 governs the circumstances under which people not originally made parties to an action, must be made parties to an action. CPLR § 1001(a) reads:
Persons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so he may be made a defendant.
Based on the foregoing, CPLR § 1001, authorizes the joinder of parties by intervention as well as dismissal for the failure to join a necessary party. CPLR § 1003, reads
Nonjoinder of a party who should be joined undersection 1001 is a ground for dismissal of an action without prejudice unless the court allows the action to proceed without that party under the provisions of that section. Misjoinder of parties is not a ground for dismissal of an action. Parties may be added at any stage of the action by leave of court or by stipulation of all parties who have appeared, or once without leave of court within twenty days after service of the original summons or at anytime before the period for responding to that summons expires or within twenty days after service of a pleading [*5]responding to it. Parties may be dropped by the court, on motion of any party or on its own initiative, at any stage of the action and upon such terms as may be just. The court may order any claim against a party severed and proceeded with separately.
Thus, intervention should be allowed when the proponent has "a bona fide interest in an issue involved in [an] action" (Yuppie Puppy Pet Products, Inc. v St. Smart Realty, LLC, 77 AD3d 197, 201 [1st Dept 2010]), meaning "where the intervenor has a real and substantial interest in the outcome of the proceedings" (In re Estate of Jermain, 122 AD3d 1175, 1177 [3d Dept 2014]), and when there has been no undue delay in seeking intervention, such that intervention will not result in prejudice (Yuppie Puppy Pet Products, Inc. at 201; Moon v Moon, 6 AD3d 796, 798 [3d Dept 2004]). Moreover, when there has been a failure to join a necessary party, the court should dismiss the action (City of New York v Long Island Airports Limousine Service Corp., 48 NY2d 469, 475 [1979] ["Since neither the commissioner nor any other State official or agency having overlapping interests is a party to this action an adverse determination would undoubtedly not be binding upon him. However, to the extent that he may feel bound, as a practical matter, to accept an adverse holding without having been heard, he would be inequitably affected by the judgment" (internal citations omitted).]; Ferrando v New York City Board of Standards and Appeals, 12 AD3d 287, 288 [1st Dept 2004]). The relevant inquiry, as stated in the statute, is whether the action, as is, can accord complete relief or whether non-parties might be inequitably affected by a judgment in the action (City of New York at 475). Dismissal for failing to join a necessary party
serves judicial economy by preventing multiplicity of suits. It also insures fairness to third parties who ought not to be prejudiced or embarrassed by judgments purporting to bind their rights or interest where they have had no opportunity to be heard
(Long Island Airports Limousine Service Corp. at 475 [internal quotation marks omitted]).
Here, NYSOSC was never a named party to this action, presumably because absent the instant circumstances, it ordinarily would have no role or interest in the instant action. However, here, where the instant application seeks to preclude NYCDF from transferring to NYSOSC the surplus funds it currently holds and which are related to this action, it is clear that NYSOSC has a significant interest in the instant action, at least as it concerns the transfer of the foregoing surplus moneys. Accordingly, for purposes of the instant motion, NYSOSC is allowed to intervene and this Court considers the arguments it makes in opposition to the instant motion. To the extent that intervention is being allowed as a direct result of the instant motion, intervention could not have been sought sooner, such that there has been no delay in seeking intervention and therefore, no prejudice to P&R.
The Court rejects NYSOSC's assertion that this Court cannot adjudicate the merits of the instant application because injunctive relief is unavailable to P&R insofar as resolution of this issue is governed by a future administrative proceeding. In other words, P&R erroneously asserts that this Court lacks subject matter jurisdiction to adjudicate the issue before it.
It is well settled that "an administrative agency's determination must be challenged through every available administrative remedy before it can be challenged in the courts" (Matter of Schenectady Nursing and Rehabilitation Ctr., LLC v Shah, 124 AD3d 1023, 1024 [3d Dept 2015]; see Watergate II Apartments v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978] ["It is hornbook law that one who objects to the act of an administrative agency must exhaust available [*6]administrative remedies before being permitted to litigate in a court of law."]; Matter of Connerton v Ryan, 86 AD3d 698, 699 [3d Dept 2011]). If, however, an administrative challenge would be futile, the proponent of judicial intervention demonstrates that absent intervention, irreparable harm will result, or where it is alleged that an agency has acted unconstitutionally, a court can intervene and review an administrative act prior to its conclusion (Watergate II Apartments v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978]; Matter of Schenectady Nursing and Rehabilitation Ctr., LLC at 1024; Matter of Connerton at 699). The reason courts ought to refrain from prematurely interfering with administrative proceedings is that such rule "furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency" (Watergate II Apartments at 57; Matter of Connerton 699).
Here, the record is bereft of any evidence that the parties are in the midst of any administrative proceeding, let alone that one even exists, which would, absent a cognizable exception, preclude this Court's intervention. Instead, NYSOSC merely points to a prospective proceeding which might occur pursuant to APL § 1412(3)[FN2]
, wherein assuming NYCDF decides not to transfer the surplus money, it will have to explain its actions to NYSOSC at a hearing. Accordingly, since the proscription against court intervention in administrative proceedings requires an actual and existing administrative proceeding (Matter of Connerton at 700 [Court held that judicial intervention by the trial court staying an administrative hearing was inappropriate, holding that because the administrative proceeding had not yet concluded, the ruling therein "is not subject to review pursuant to CPLR article 78 until the administrative proceeding is completed and a final determination is rendered" (internal citations and quotation marks omitted).]) or prior administrative proceeding, the results of which can be challenged by further administrative action (Matter of Schenectady Nursing and Rehabilitation Ctr., LLC at 1024 [Petitioner's Article 78 proceeding seeking to annul administrative decision dismissed because administrative appeal was pending.]), here, absent such a proceeding, this Court can entertain the merits of the instant application.
Upon a review of the merits of the instant application, while P&R establishes a likelihood of success on the merits, namely that on this record, it is likely it will receive all or at least some of the surplus money at issue, P&R nevertheless fails to establish, as it must, that absent [*7]injunctive relief, preventing NYCDF from transferring the relevant surplus money to NYSOSC, it will be irreparably harmed.
As noted above, a preliminary injunction will only be granted when the party seeking such relief demonstrates a likelihood of ultimate success on the merits, irreparable injury if the preliminary injunction is withheld, and if a balance of equities tips them in favor of the moving party (Nobu Next Door, LLC at 840; Doe at 750; 61 West 62 Owners Corp. at 334; Second on Second Cafe, Inc. at 264; Stockley at 536). With respect to irreparable harm, generally, the inquiry is whether in the absence of a preliminary injunction, usually to preserve the status quo, any judgment in the underlying action would be rendered ineffectual (Ma at 186; Moy at 604).
Pursuant to APL § 600(1) "unclaimed property shall be deemed abandoned property," and includes
[a]ny moneys including the monetary proceeds from the sale of tangible personal property and securities or other intangible property paid into court, which, except as provided in section ten hundred of this chapter, shall have remained in the hands of any county treasurer, or the commissioner of finance of the city of New York, for three years, together with all accumulations of interest or other increment thereon, less such legal fees as he may be entitled to
(APL § 600[1][a]). Pursuant to APL §602(1),
[i]n such succeeding month of April, and on or before the tenth day thereof, every county treasurer and the commissioner of finance of the city of New York shall pay or deliver to the state comptroller all abandoned property specified in paragraph (a) of subdivision one of section six hundred, which was so abandoned as of the first day of January next preceding
Accordingly, P&R avers, which view is wholly uncontroverted, that it was advised by NYCDF that the surplus money in this action which had been deposited with the Clerk/NYCDF on January 17, 2019, would be deemed abandoned and transferred to NYSOSC on April 5, 2023. The foregoing assertion is consistent with APL §§ 600(1), 600(1)(a) and 602(1). However, P&R contends that on this record, these funds belong to it, that the notice it filed claiming the surplus funds establishes that the surplus money has been claimed such that it cannot be deemed abandoned, and that it expects to have said sums distributed by order of this Court in the near future. P&R is correct and therefore demonstrates a likelihood of success on the merits. Stated differently, P&R establishes the surplus money at issue is not unclaimed, therefore not abandoned, such that NYCDF need not transfer it to NYSOSC pursuant to APL § 602(1).
First, to the extent that the surplus money in this action was deposited with the Clerk/NYCDF solely as a result of this action and with clear reference to it, it is clear that the foregoing funds are not unclaimed so as to deem them abandoned and subject to APL §§ 600 and 602. Indeed, a proceeding seeking surplus money in a foreclosure action is not collateral to the foreclosure, and is, in fact, part and parcel of the foreclosure action itself (NYCTL 1997-1 Tr. v Stell, 184 AD3d 9, 14 [2d Dept 2020]. ["Surplus money proceedings are not collateral to the foreclosure, but are in the action itself. And the rights of lienors subsequent to the mortgage under foreclosure are before the court and must be protected as much as those of the owner of the property" [internal quotation marks omitted].). Surplus money stands in place of the land for purposes of its distribution, which is to be paid to anyone having vested interests and liens upon [*8]the land (NYCTL 1997-1 Tr. at 14; Shankman v Horoshko, 291 AD2d 441, 442 [2d Dept 2002]). Significantly, a foreclosure action is not terminated until the surplus funds are distributed in the action (NYCTL 1997-1 Tr. at 14; Davison v MacDonald, 124 Misc 726, 728 [Sup Ct 1925], affd, 216 AD 759 [2d Dept 1926]).
Accordingly, since the surplus money in this case, and indeed in any foreclosure action, is held as a result of an existing and not yet concluded action, it is farcical to contend - as urged - that the instant funds are unclaimed and therefore abandoned. In other words, it is illogical to assert, as urged here by NYSOSC, that surplus money attached to an existing foreclosure action, which until released and paid, said action cannot be terminated, is unclaimed so as to deem it abandoned. At the very least, even if no one files a claim for the money, it is nevertheless attached to an existing action before a court, such that it should remain with the Clerk/NYCDF. 
Second, here, such funds were actually claimed by P&R and the City of New York. Therefore, well settled principles of statutory construction preclude any assertion that the funds are unclaimed so as to fall within the ambit of APL § 600(1). Significantly, with regard to statutory interpretation,
courts are obliged to interpret a statute to effectuate the intent of the Legislature, and when the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words
(People v Finnegan, 85 NY2d 53, 58 [1995] [internal quotation marks omitted]; People v Anonymous, 43 AD3d 806, 807 [1st Dept 2007]; Ryder v City of New York, 32 AD3d 836, 837 [2d Dept 2006]; Statutes Law § 94 ["The legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction."). Accordingly, to the extent that APL § 600[1] and [1][a], read together, state that "monetary proceeds from the sale of tangible personal property," if "unclaimed . . . shall be deemed abandoned property," and Merriam-Webster Dictionary defines unclaimed "as not called for by an owner or consignee" (Merriam-Webster.com Dictionary, unclaimed [https://www.merriam-webster.com/dictionary/unclaimed]), it is clear that the instant money has, in fact, been claimed.
Moreover, in light of the Court's (Gonzalez, J.) decision, dated February 28, 2020, which extinguished the only other claim to the surplus money, unless other claims are made, it is clear that the funds belong to P&R. Accordingly, it is likely that P&R will receive all or some of the surplus money upon a proper application and an order of this Court. As such, P&R establishes a likelihood of success on the merits.
Despite the foregoing, however, P&G fails to establish that absent injunctive relief, it will be irreparably harmed by the transfer of the surplus money to NYSOSC. Here, P&R avers that if no injunction is issued, in order to obtain the funds from NYSOSC, NYSOSC will "require a new Certificate of Deposit. . . which currently takes 120 days." Notably, P&R does not aver that the impending transfer will in any way prevent it from ultimately obtaining the surplus money. Nor could it since APL § 1406, in prescribing a mechanism to obtain property deemed abandoned from the state, promulgates that a "[c]laim may be filed with the state comptroller for any abandoned property (APL § 1406[1][a])." Moreover, APL § 1407 allows the NYSOSC to tender payment from the abandoned property fund upon presentation of a court order (APL § [*9]1407 ["Any claim which is allowed by the comptroller or ordered to be paid by him by a court of competent jurisdiction pursuant to the provisions of section fourteen hundred six of this article, together with such costs and disbursements as may be allowed by the court, shall be paid, together with any interest accrued on such claim pursuant to section fourteen hundred five of this article, out of the abandoned property fund."]). Accordingly, to the extent that ultimately P&R will be entitled to receive the surplus money, even if transferred to the NYSOSC, with interest, absent an injunction, there is simply no evidence of irreparable harm. Indeed, P&R's assertion that it will have to obtain a new Certificate of Deposit is unsupported by the applicable statutes. Even if the foregoing were true, it would not be tantamount to irreparable harm sufficient to warrant injunctive relief.
Since in balancing of equities, the court is required to look at the prejudice which may accrue to the parties in the event the application for an injunction is granted or denied (Ma at 186-187), and usually the equities tip in favor of the party who would be irreparably harmed absent the grant of a preliminary injunction (id. at 187), here, the absence of irreparable harm tips the equities in favor of NYSOSC and against the grant of a preliminary injunction.
To the extent that P&R sought to persuade this Court to grant the instant application by referring to multiple orders from other trial courts, this court rejects each one. 
Preliminarily, it is worth noting that decisions issued by judges of coordinate jurisdiction do not bind this Court and need not be followed (Mtn. View Coach Lines, Inc. v Storms, 102 AD2d 663, 665 [2d Dept 1984] ["While we should accept the decisions of sister departments as persuasive, we are free to reach a contrary result" (internal citations omitted).]; Hudson Val. Bank, N.A. v Banxcorp, 28 Misc 3d 1232[A], *8 [Sup Ct 2010]; Matter of State v Rosado, 25 Misc 3d 380, 416 [Sup Ct 2009]). 
Substantively, none of the decisions on which P&R relies actually analyze the relevant issue in any significant way, instead, giving them very short shrift. Even when the foregoing court undertake an analysis of some of the relevant requirements for the grant of a preliminary injunction and conclude that surplus money is not abandoned property under APL § 600(1) and (1)(a) (Live well Financial, Inc. v Robinson, et al., Index # 722503/20 [Supreme Court, Queens County]; Wells Fargo Bank, N.A. v Leong, et al., Index No. 710772/15 [Supreme Court, Queens County]), they nevertheless completely fail to explain how the transfer of the funds to NYSOSC will irreparably harm the claimant therein. Indeed, while the court in NYCTL 1998-2, et al. v Ugochukwu (Index No. 703116/14 [Supreme Court, Queens County]) found irreparable loss absent an injunction, it did so on grounds that the transfer of the funds to NYSOSC would cause undue delay to the claimant. Since that court did not provide any further facts, it is hard to ascertain whether the record there was different than the record before this Court. As already noted above, however, the procedure described by APL §§ 1406 and 1407 appears to streamline the procedure whereby the claimant of surplus money can easily and quickly receive money from NYSOSC upon presenting the same with a court order. Thus, any claim of potential and significant delay is belied by the patent language of the foregoing statutes. Accordingly, the instant motion is denied. It is hereby
ORDERED that all stays be lifted within 30 days hereof. It is further
ORDERED that NYSOSC serve a copy of this Decision and Order with Notice of Entry upon all parties within thirty (30) days hereof.
Dated: 4/26/23
Bronx, New York
______________________________
HON. FIDEL E. GOMEZ, JSC

Footnotes

Footnote 1: While NYSOSC has not made an application to intervene, all parties proceed as if NYSOSC is a party. Accordingly, for the reasons that will be discussed hereinafter, this Court will treat NYSOSC as a defendant to this action under well settled principles governing intervention.

Footnote 2: Pursuant to APL § 1412(4) "[u]pon the failure of any person to fully and completely report and pay or deliver abandoned property to the comptroller pursuant to this chapter or any other law relating to abandoned property, the comptroller shall issue a determination of the amount due and owing him as custodian of the abandoned property fund. Such determination shall be served by certified mail upon the person failing to report and pay or deliver and shall be presumptive evidence of the amount stated therein as due and owing the comptroller. Such presumption shall apply to that portion of the stated amount which is alleged to have become payable or deliverable as abandoned property no longer than five years following the thirty-first day of December of the year in which such report was required to be filed. If a full and complete report and payment or delivery is not made by such person within thirty days following the receipt of the determination, the comptroller shall convene a hearing, upon reasonable notice, in order to certify the amount due as abandoned property. The notice of hearing shall be served by certified mail upon the person having failed to report and pay or deliver."