Enki Props. LLC v Hakim (2025 NY Slip Op 51069(U))

[*1]

Enki Props. LLC v Hakim

2025 NY Slip Op 51069(U)

Decided on July 3, 2025

Civil Court Of The City Of New York, New York County

Greenfield, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 3, 2025
Civil Court of the City of New York, New York County

Enki Properties LLC, Plaintiff,

against
Ebrahim Hakim, Defendant.

Index No. CV-008273-24/NY

Allison R. Greenfield, J.

Recitation, as required by CPLR 2219(a), of the papers considered in review of this motion:
Papers Numbered
Order to Show Cause / Notice of Motion 1, 3
Affidavits/Affirmations annexed 2, 4
Answering Affidavits/Affirmations 5
Reply Affidavits/Affirmations 6
Memoranda of Law
Other
Upon the foregoing cited papers, the non-party tenants' motion to intervene is granted, and plaintiff's cross-motion for summary judgment is denied for the following reasons:
Background
Plaintiff, the owner and landlord of a building at 1024 Sixth Avenue, New York, New York, rented out a portion of the building to non-party tenants, Fabriano Closeout Store 34th St. Inc. & 1024 6th Ave. Corp. ("the Tenants") pursuant to a commercial lease agreement. As part of the lease requirements, the Tenants provided plaintiff with a security deposit in the amount of $45,000.00, which was subsequently increased to $46,350.00.
The Tenants defaulted on their payment obligations pursuant to the lease, and plaintiff commenced a non-payment action in Civil Court, LT-309972-24/NY, seeking a warrant of eviction and a money judgment for the rental arrears (the "Non-Payment Action"). The Non-Payment Action resulted in a stipulation of settlement, so-ordered on July 25, 2024, whereby the tenants agreed to make scheduled payments on their rental arrears. See Plaintiff's Exhibit F.
On August 19, 2024, a fire started in the basement of the building and caused extensive damage to the demised premises. There is a dispute as to the extent of the fire damage: the Tenants affirm that the demised premises are completely unusable, while plaintiff's managing agent, Solomon Mendel, affirms that only a portion of the demised premises was rendered unusable.
Tenants had made all payments pursuant to the stipulation of settlement up until the date [*2]of the fire, at which point they stopped making payments. 
Plaintiff then commenced this action against defendant, the guarantor of the lease.
The Tenants now move to intervene, arguing that because of the fire, the premises have been rendered unusable, and that, pursuant to Article 9 of the lease, the security deposit should be returned to the Tenants or applied to pre-fire rental arrears, which affects the obligations of the guarantor. The Tenants also allege that plaintiff has violated General Obligations Law ("GOL") § 7—103(1) by comingling the security deposit, requiring its immediate return.
Plaintiff now cross-moves for summary judgment against the guarantor, arguing that the guarantor has waived any rights to the security deposit pursuant to the "Good Guy Guaranty," and that plaintiff applied the security deposit to the post-fire rent. Further, plaintiff, by David Zaga, disputes that the security deposit was commingled.
Discussion
As an initial matter, there is a disputed issue of fact as to whether plaintiff commingled the security deposit in violation of GOL § 7—103(1). Although paragraph 64 of the lease specifically permits plaintiff to commingle funds, "GOL § 7—103(1) cannot be waived and [] the provision of the lease purporting to grant defendant the right to commingle the security deposit was 'absolutely void' under the statute." Tappan Golf Dr. Range, Inc. v Tappan Prop., Inc., 68 AD3d 440, 440-41 (1st Dept 2009). Although Mr. Zaga affirms in conclusory fashion that the "security deposit was not commingled with Landlord's monies," he fails to attach any account statements or other documentary evidence in support of his claim. Accordingly, there is a disputed issue of fact as to whether the security deposit was commingled in violation of GOL, necessitating its return to the Tenants.
Pursuant to the stipulation of settlement, any execution of the warrant of eviction and the money judgment was stayed until at least September 22, 2024, after the date of the fire. The stipulation of settlement does not explicitly say that the lease is terminated. In fact, the stipulation specifically holds, in paragraph six, that "[d]uring the stay period, both parties shall continue to abide by the terms and conditions of the Lease, except as modified herein." There are no further modifications to Article 9 (Destruction, Fire, and Other Casualty) in the stipulation of settlement. See Plaintiff's Exhibit F.
Thus, at the time of the fire, the provisions of Article 9 of the Lease were operative. Article 9, as here pertinent, states as follows:
(a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth.
(b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner, and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the demised premises which is usable.
(c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly [*3]provided shall be proportionately paid up to the time of the casualty and henceforth shall cease until the date which the demised premises shall have been repaired and restored by Owner (or sooner reoccupied in part by the Tenant then rent shall be apportioned as provided in (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided.
(d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then in any of such events Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying the date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the demised premises without prejudice, however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonably expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the demised premises are substantially ready for Tenant's occupancy.
Plaintiff's Exhibit D, Article 9.
Accordingly, there are factual disputes arising out of Article 9's application. Significantly, there are factual disputes as to the following: (1) whether the fire rendered the demised premises wholly unusable; (2) what date, if any, the Tenants surrendered possession of the demised premises; and (3) whether the Tenants reasonably cooperated in moving their salvageable inventory as promptly or reasonably as possibly. Thus, plaintiff's motion for summary judgment must be denied.
CPLR 1012(a)(2) provides that any person shall be permitted to intervene in an action when "the representation of the person's interest by the parties is or may be inadequate and the person is or may be bound by the judgment." CPLR 1013 provides that a court, in its discretion, may permit intervention when "the person's claim or defense and the main action have a common question of law or fact. In exercising its discretion, the court shall consider whether the intervention will unduly delay the determination of the action or prejudice the substantial rights of any party." 
"Intervention is liberally allowed by courts, permitting persons to intervene in actions where they have a bona fide interest in an issue involved in that action. Distinctions between intervention as of right and discretionary intervention are no longer sharply applied." Yuppie [*4]Puppy Pet Prods., Inc. v St. Smart Realty, LLC, 77 AD3d 197, 201 (1st Dept 2010) (citations omitted) (reversing trial court's denial of motion to intervene). 
In the instant case, the Tenants have demonstrated common questions of law and fact that support intervention. The Tenants' claim for the security deposit and the legal repercussions of the fire are both inextricably linked to plaintiff's claim to enforce the guaranty. Although the guaranty waives guarantor's right to the security deposit, the guarantor's obligations under the guaranty are inextricably intertwined to Tenant's continued occupation of the demised premises. If there was an effective surrender as a result of the fire, guarantor's liability would be reduced notwithstanding his waiver to the security deposit. See Seabring, LLC v Elegance Rest. Furniture Corp., 188 AD3d 744, 748 (2d Dept 2020) (finding that although personal guaranty waived guarantor's right to security deposit such waiver did not prohibit the reduction of security deposit from total obligation payable under the lease and guaranty).
Moreover, plaintiff has failed to demonstrate any undue delay or prejudice that would result from permitting the Tenants to intervene.
Accordingly, it is hereby
ORDERED that the motion of the non-party Tenants Fabriano Closeout Store 34th St. Inc. & 1024 6th Ave. Corp. to intervene is granted; and it is further
ORDERED that Fabriano Closeout Store 34th St. Inc. & 1024 6th Ave. Corp. are hereby deemed defendants to the instant action, and the caption shall be amended to add Fabriano Closeout Store 34th St. Inc. & 1024 6th Ave. Corp. as party defendants; and it is further
ORDERED that Tenants Fabriano Closeout Store 34th St. Inc. & 1024 6th Ave. Corp. proposed answer and counterclaims, annexed to their motion as Exhibit A, is hereby deemed filed and served upon plaintiff as of the date of this Order, and all responsive pleadings thereto shall be served in accordance with the CPLR; and it is further
ORDERED plaintiff's cross-motion for summary judgment is denied.
This constitutes the decision and order of the court. 
DATED: July 3, 2025
New York, New York
Hon. Allison R. Greenfield
Judge of the Civil Court